IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SPENCER UNG, Plaintiff, | ) | No. 16 C 10544 |
| -vs- | ) | Chicago, Illinois<br>November 21, 2016<br>9:30 o'clock a.m. |
| UNIVERSAL ACCEPTANCE CORPORATION, Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS - MOTION
BEFORE THE HONORABLE MILTON I. SHADUR

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | KEOTH LAW, LTD.<br>BY: MR. MICHAEL S. HILICKI<br>55 West Monroe Street<br>Suite 3390<br>Chicago, Illinois 60603 |
| For the Defendant: | McGUIRE WOODS LLP<br>BY: MS. AMY STARINIERI GILBERT<br>77 West Wacker Drive<br>Suite 4100<br>Chicago, Illinois 60601 |
| For Respondent Verizon Wireless: | DLP PIPER LLP<br>BY: MS. BEVIN M. BRENNAN<br>203 North LaSalle Street<br>Suite 1900<br>Chicago, Illinois 60601 |
| Court Reporter: | ROSEMARY SCARPELLI<br>219 South Dearborn Street<br>Room 2304A<br>Chicago, Illinois 60604<br>(312) 435-5815 |

APPEARANCES: (Cont.)

| | |
|---|---|
| For Respondent T-Mobile: | PERKINS COIE LLP<br>BY: MS. DEBRA RAE BERNARD<br>131 South Dearborn Street<br>Suite 1700<br>Chicago, Illinois 60603 |
| For Respondent U.S. Cellular: | SIDLEY AUSTIN LLP<br>BY: MR. PAUL E. VEITH<br>One South Dearborn Street<br>Chicago, Illinois 60603 |
| For Respondent New Cingular Wireless: | HAYNES BOONE<br>BY: MR. AARON TAGGART<br>180 North LaSalle Street<br>Suite 2215<br>Chicago, Illinois 60601 |

THE CLERK: 16 C 10544, Ung versus Universal Acceptance Corporation.

THE CLERK: That is last.

THE COURT: Oh, okay.

MR. HILICKI: Good morning, your Honor, Michael Hilicki for the movant and plaintiff.

MS. BERNARD: Good morning, your Honor, Deborah Bernard for respondent T-Mobile.

MS. BRENNAN: Good morning, your Honor, Bevin Brennan on behalf of Verizon Wireless, also a respondent.

MS. STARINIERI: Good morning, Amy Starinieri on behalf of Universal Acceptance.

MR. VEITH: Good morning, Paul Veith on behalf of one of the respondents, United States Cellular Corporation.

MR. TAGGART: Good morning, your Honor, Aaron Taggart on behalf of respondent New Cingular Wireless.

THE COURT: Did I miss something; did somebody speak up for Verizon?

MS. BRENNAN: I did, Bevin Brennan.

THE COURT: All right. Let's talk first about the issue of -- which I know is not applicable to everybody, but the issue about whether the state provisions that preclude delivery of such information are somehow preempted by Rule 45. That is a -- sort of -- in candor that is the sort of bizarre extension of the notion of federal supremacy. And I

read over what Matt Kennelly did in his case that dealt with that, and I think that is really quite persuasive.

The idea that a part -- that a nonparty might be subjected to liability in a state proceeding as a result of this kind of tagalong thing in this action is really not persuasive. I certainly don't expect Mr. Ung to reimburse them for that, but it seems to me that the -- because I don't know what his financial position is. You know, he might strike it rich in connection with this litigation. But I don't know that.

So it seems to me that the -- that the position that has been advanced that says, look, we are really -- we are really not in a position to do that with respect to the couple of states that are involved is a persuasive one.

In addition to that, you know, the idea that even the cheap means of notification which they say is a postcard is going to cost $6,000, and again for a nonparty is quite troubling as well. That may serve the purposes of perhaps class treatment, but it is -- but to shift costs in that fashion again is I think somewhat troubling as well. So I am -- I find myself in terms of what the Verizon presentation had been as one of -- that is quite persuasive.

Now, I don't know what the -- what the compliance or noncompliance by New Cingular and T-Mobile is based upon, but I ought to hear from counsel about that.

MS. BERNARD: Thank you, your Honor. Again Deborah Bernard for T-Mobile. I was just retained for this late last week, your Honor. Otherwise we would have also filed a written response. And we would like to file a written response if necessary.

A couple issues here, Judge. Unlike some of the other carriers, with respect to T-Mobile we can't just make a simple SQL query and obtain the information that they are looking for from a list of 1.8 million subscribers, some of which may be T-Mobile, some Verizon, some Cingular, et cetera. It is a little more complicated than that for us. In fact, I was the lawyer in the Birchmeier case on behalf of T-Mobile that resulted in that ruling by Judge Kennelly. So that is No. 1.

No. 2, class hasn't -- in the Birchmeier case class was certified, so that was even a more -- a better argument for the disclosure of this information. Here there has been no class certified yet, so what we are asking -- and plaintiff's position is, well, the other side has said, you know, we can't certify the class because the defendants are saying the class isn't ascertainable because you don't have the carriers' records. That is not quite what the defendant's argument was. And I am sure the defendant's counsel can illuminate that some more.

But we would be willing to provide an affidavit

that says that is the type of information we can provide, which for us will take weeks of trying to sift through the 1.8 million numbers, find the T-Mobile numbers, narrow down the dates because they are specific dates, et cetera.

So again, your Honor, we agree with you that that is quite a shift in burden, especially at this point in the litigation, and certainly there is no way we can do it by November 23rd, which is the date their reply to the summary -- to the class certification motion is due.

THE COURT: And the other one is Cingular?

MR. TAGGART: Yes, your Honor. New Cingular Wireless is in a similar situation. We also -- I will note that this particular subpoena is approximately 14 times larger than any request New Cingular has ever received before, and therefore the -- in order to search the large number of calls requested would essentially require them to develop a new method for accessing and creating this particular search similar to T-Mobile where it is not simply submitting one query to their databases. That is not the way their system works. So the burden in creating this search is certainly significant.

THE COURT: Yes.

MR. TAGGART: And we agree that it can be avoided, particularly if the class is not certified where this is --

THE COURT: Well, let me ask plaintiff's counsel.

What do you need in terms of numerosity and typicality in order to qualify yourself for potential class certification? I would be surprised to hear that you really need everything from all these parties in order to do that. And I don't know what you are going to need in order to tee yourself up for actual ruling on the certification motion.

MR. HILICKI: Well, the issue here, your Honor, is ascertainability of the class. The defense has taken the position that we can't ascertain the class because their own calling records do not have complete name information of the subscribers they call and they do not have address or other contact information for the subscribers they call.

Our position is the cell phone companies have that information. In fact they -- everyone I have talked to has confirmed, yes, we have the information. So my burden then is to get the information.

The defense has also cited case law but specifically a case called Sherman versus Yahoo out of -- I think it was the Southern District of California -- yes -- where the plaintiff said we can ascertain the class, we can go to the cell phone companies and get the name and contact information. And the Court is like, well, you say you can do that, but you haven't done it, and because you haven't done it the Court found fault with the plaintiffs for not having met their burden of proving ascertainability.

We don't want to be caught in that trap, so that is why we are asking the cell phone companies with a subpoena -- so I guess more than just a request -- to produce the information that we need that other -- at least one other court has said you need in order to prove your -- meet your burden of proving ascertainability.

MR. TAGGART: If I may, your Honor, similar to T-Mobile New Cingular Wireless has also suggested that we can submit an affidavit indicating the capabilities we have and the type of information we are able to retrieve, which I believe would address the concerns that plaintiff counsel has raised without having to actually produce the underlying information.

MR. HILICKI: And again, your Honor, my concern is that the Court will think that that is not sufficient, saying, okay, the cell companies are telling you we can do it, but, you know, they have to actually do it. If you don't have the information, then we find you haven't met your burden on ascertainability. I am trying --

THE COURT: Too much of this sounds like the cart before the horse approach. You are expressing uncertainty. I can understand that. But it seems to me that probably a more constructive thing would be for you to fashion a proposed motion for a class certification and see what kind of shortfall or deficiencies are involved, particularly in

light of the kinds of objections you have gotten. Let the -- let the defendants who have been -- you have already gotten some substantial compliance as I understand it, right?

MR. HILICKI: Yes, your Honor --

THE COURT: Okay.

MR. HILICKI: -- from a few of the carriers.

From a handful -- from Sprint we have received a lot -- most -- almost complete compliance. They just haven't produced information for California, Pennsylvania and Dell -- California and Pennsylvania, excuse me.

And for Verizon they have given me this call data for all states except Delaware and Pennsylvania and --

THE COURT: California.

MR. HILICKI: -- and California, but they haven't produced any names and address information from the subscribers because of this objection.

And then for U.S. Cellular they have produced complete information except for Delaware, Pennsylvania, California, although I would add that U.S. Cellular was willing to produce that information with an order from this Court directing them to do so. And Sprint was willing to produce the Pennsylvania and California information with an order from this Court directing them to produce it to the Clerk of Court and then be turned over to us. So we have already got -- two of the carriers have volunteered to

produce that information. All they need is an order from your Honor directing them to do so.

MS. BERNARD: Your Honor, a couple points. Again Deborah Bernard on behalf of T-Mobile. No. 1 is the motion for class certification has been filed and is -- has -- the defendant filed an opposition and plaintiffs need to file a reply. And the arguments made in their opposition to class certification aren't just that, you know, the -- you need to get the information from the carriers. In fact, I don't think they specifically make that argument. They make the argument that the carriers' information isn't going to identify the subscriber, user, et cetera.

But more importantly the fact that they have already gotten some information from carriers I think enables them to make the argument that that information is available, et cetera, without burdening the carriers who don't -- who can't do it by simple SQL query.

THE COURT: Remember I am simply a shirttail relative on this thing.

MS. BERNARD: Right.

THE COURT: As you know, this case doesn't even get -- this case gets closed the day it is opened statistically in our District -- our Clerk's Office because all I am here for is to see about the potential assistance in the case which is pending elsewhere and on which I was going to ask

how far advanced it is in that regard. It sounds to me as though -- as though the -- with the information that you have already from a number of the carriers and the kind of supplementation that has been talked about by the people that have not complied to this point, you certainly ought to have a -- if you are going to get certification at all, which is up to the court elsewhere, that you certainly ought to have an extraordinarily good shot at it with that kind of information. It is not as though you are laboring in an absence of information at all.

So what I am going to do on this one is I will -- I don't know, why do you want to get briefing done in connection with -- wait a minute -- in connection with this thing which is so collateral to the main thing? What kind of indication do you get from the district judge who has really got control of the case in terms of what is needed? Any response at all?

MR. HILICKI: That is the thing, your Honor, we don't -- in the District of Minnesota you don't get to talk to the judge, if at all, until after all the paper is in. You can't just have a motion hearing and get up in front of a judge.

THE COURT: How long has that been in?

MR. HILICKI: I beg your pardon?

THE COURT: How long has that been pending over

there?

MR. HILICKI: The class certification motion or --

THE COURT: Yes.

MR. HILICKI: Well, there has been multiple stays of the case. So if I tell you that -- how long it has been pending, holy cow. But the motion was filed on April 1st. But there has been two or three stays in the case since then. The last stay was just lifted a couple of weeks ago. So that is why we had to crank up the machine again on enforcing these subpoenas, and that is why we are before your Honor.

THE COURT: It seems to me that the orderly thing is simply to get the supplemental information that has been talked about from the -- from the parties who are saying, wait a minute, this is -- we are in a different kind of ballpark from those who can simply push a button and get spit out the results electronically. They are saying that something significantly greater than that and more expensive than that is going to be involved. Get that information. And I can -- if you wish, since the case is closed anyway, I can simply await something -- if you get a hard time from the judge who is deciding it saying, "That is not enough," you can come back here.

But it doesn't seem to me that it makes a lot of sense to go ahead with compelling compliance with the subpoenas as written, you know. I don't think anybody's

interests are well served by that. So let's have that done. Let's have the supplemental information from T-Mobile and New Cingular that they have talked about. You will be armed with their response that says it is much more difficult for us, more expensive and so on. And I think you can even in that regard hold off on the actual production of the material from the others that would be expensive on their part. And if you have a problem with the district judge who says, "No, you haven't delivered enough," come back. I don't -- I will deal with it.

MR. HILICKI: Your Honor, my concern with that -- I appreciate what you are saying. My concern with the come back idea is that we are at the end of our case in Minnesota. The dispositive motion deadline is here. We are -- I don't know if we will get another shot at it. This may be our only hurrah.

THE COURT: Well, of course I run only one court.

MR. HILICKI: I understand that, your Honor.

THE COURT: You know, I am not unsympathetic toward the notion of what you have to do in order to satisfy a district judge in order to qualify for class certification. When I get them here more typically as -- in consumer lawsuits, what happens is that the -- it gets resolved in a different fashion. But I am not in a position to compel compliance in the form that you have asked for. It seems to

me that this partial step is one that you -- that you -- that when you are armed with that, you can go back to the -- to the district judge there and say here is what we have and see whether that is enough to satisfy the court.

MR. HILICKI: Your Honor, by partial step, just to make sure I understand, are you saying the declarations they discussed which say that we can -- we have the information, we can produce it, and, you know, we will do so -- I don't know if they say they will do so, but --

THE COURT: Well, whatever they have said they have said. And they are really telling us that because of their system it is not as readily available as it has been for the others.

MR. HILICKI: Okay.

THE COURT: Okay?

MR. HILICKI: And, your Honor, what about the Sprint and U.S. Cellular who are willing to produce the information so long as they receive direction from the Court ordering them to do so?

THE COURT: That is -- no reason -- I don't hear anybody objecting to that, so --

MR. VEITH: Well, let me explain, your Honor. Veith Veith for U.S. Cellular. Our system is such that it wasn't apparently as difficult to get the records.

THE COURT: Yes.

MR. VEITH: U.S. Cellular is also a fraction of the size of a Verizon, a T-Mobile, et cetera. So the burden wasn't as great. We worked out with the plaintiff's counsel.

THE COURT: Yes.

MR. VEITH: We have produced as of last Friday in excess of probably 98 percent --

THE COURT: So get me -- on that one simply get me a form of order --

MR. VEITH: Okay.

THE COURT: -- that is needed in order to take care of and send it over. And I will assume that if there is an objection to form, I need two sets. But I hope that does not exist. Just send it over and I will sign it and you have got it. Okay?

MR. HILICKI: That is fine.

MR. VEITH: Okay.

THE COURT: And as to Sprint's, I don't know if Sprint's counsel has to weigh in on --

MS. BERNARD: Your Honor, I am -- I do represent Sprint but not in this matter. So I think Mr. Hilicki needs to address that with the inhouse counsel he has been dealing with.

THE COURT: Okay.

MR. HILICKI: I would be happy to do so if they

will agree to submit an order along the lines of U.S. Cellular, that will be -- if that satisfies the Court, that is great.

THE COURT: All right. Thank you all.

MR. HILICKI: Thank you, your Honor.

MS. BERNARD: Thank you, your Honor.

MR. VEITH: Thank you, your Honor.

MS. BERNARD: Have a nice holiday.

THE COURT: You too.

(Which were all the proceedings heard.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/Rosemary Scarpelli/ Date: December 12, 2016